UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-20446-Civ-TORRES

CE NORTH AMERICA, LLC,

    *Plaintiff*,

v.

CERTAIN UNDERWRITERS AT LLOYDS',
LONDON SUBSCRIBING TO POLICY
NUMBER B0799MC036620J,

    *Defendant*.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on CERTAIN UNDERWRITERS AT LLOYD'S, LONDON's (hereinafter "Underwriters," "Defendant," or the "Insurer") Motion for Summary Judgment [D.E. 34], against CE NORTH AMERICA, LLC, (hereinafter "CENA," "Plaintiff," or the "Company"). Plaintiff filed a timely response to the Motion on May 19, 2022, [D.E. 42], to which Defendant replied on June 16, 2022.[1] After careful consideration of the briefing materials, the evidence of record, the relevant authorities, and for the reasons discussed below, Defendant's Motion is GRANTED.

---

[1] On October 16, 2020, the Honorable Kathleen M. Williams referred all proceedings in this matter to the undersigned Magistrate Judge pursuant to the Parties' consent to magistrate jurisdiction. [D.E. 28].

1

## I. BACKGROUND[2]

This is an insurance coverage dispute relating to a marine cargo policy issued by Underwriters to CENA, with an effective policy term of December 31, 2016, through March 5, 2018 (Policy B0799MC036620J) (the "Policy"). CENA's coverage claims arise from alleged losses caused by Hurricane Maria to certain merchandise and inventory stored in Puerto Rico on September 20, 2017. Underwaters has accepted coverage and extended payment for a portion of CENA's losses, but other portions of CENA's claims are disputed by the Insurer.

### A. *The Losses and the Policy*

In the months following Hurricane Maria, CENA, a business engaged in the distribution of household appliances to wholesale retailers, filed coverage claims with the Underwriters for losses to certain items stored in warehouses across three Puerto Rican municipalities: Coamo, Comerio, and Luquillo. After appointing Crawford Global Technical Services ("Crawford") to reviewed and investigate CENA's claims, the Underwriters acknowledged coverage and extended payment for a portion of CENA's losses in the sum of approximately $1.5 million. However, upon Crawford's opinion that the remaining claims were not properly documented, the Underwriters withheld payment and disputed coverage with regard to CENA's two additional claims.

---

[2] The relevant undisputed facts are taken form Defendant's Statements of Material Fact in Support for its Motion for Summary Judgment [D.E. 33] and Plaintiff's Statements of Material Facts in Opposition to Defendant's Motion for Summary Judgment [D.E. 43].

The first of these claims stems from inventory losses sustained by Del Sol Foods, LLC, ("Del Sol"), a CENA-related entity that is engaged in the sale of food and water. This portion of CENA's claim pertains to losses of bottled water related inventory, including plastic bottles, caps, labels, and drinkable water stored by Del Sol at warehouses in Coamo, Comerio, and Luquillo (the "Water Products Claim"). According to CENA's calculations, this claim amounts to $1,092,686.52 and represents a covered loss that CENA is entitled to recover under the terms of the Policy.[3]

The second disputed claim pertains to what the parties have deemed extra expenses, and these amounts derive from fees and payments allegedly incurred by CENA in relation to post-hurricane cargo hauling and storage needs (the "Extra Expenses Claim"). According to Plaintiff, because the hurricane destroyed its warehouses and impaired cargo flows activity at the ports, the company had to incur expenses associated with alternative storage facilities and cargo demurrage fees. CENA's discovery responses have valued this claim at $191,351.

The relevant Policy language is as follows:

**Assured**:
CE North America and /or Associated and/or Affiliated and/or Subsidiary Companies or Corporations, Firms or Organizations[.]

\* \* \*

**Additional Named Assureds**:
CE Brands, LLC; CE Caribe LLC; CE International LLC; CEM Global LLC; Continental Electric LLC; Del Sol Foods LLC[.]

---

[3] Del Sol is owned by members of the Leyva family who also hold an ownership interest in CENA, and is an insured party under the express terms of the Policy.

\* \* \*

**Subject-Matter Insured**:
All good and/or merchandise of every description incidental to the business of the Assured or in connection therewith consisting principally of, but not limited to, household appliances &/or Tools &/or Sporting Goods &/or Camping equipment &/or canned goods.

\* \* \*

**Basis of Valuation**:
Sales Price

\* \* \*

**Container Demurrage Charges**:
This policy shall cover demurrage charges and or late penalties assessed against, and paid by, the Assured for late return of containers where said containers are retained by the Assured at the instruction of the Insurer for inspection by the Insurer's Surveyor[.]

\* \* \*

**Demurrage Charges**:
If the Assured is instructed by the Underwriters to hold an intermodal container, and the Assured is assessed a late penalty and/or demurrage charge for holding the intermodal container past the return date, these Underwriters will pay the late penalty and/or demurrage charges.

\* \* \*

**Extra Expense Extension**:
This insurance is extended, following direct physical loss or damage to the subject matter insured hereunder, to cover any additional costs incurred by the Assured for the procurement of replacement product of a like quality, to satisfy existing or future obligations to customers. Subject to a limit of USD500,000 any one occurrence and in the annual aggregate.

\* \* \*

**Labels Clause**:
(a) In case of damage effecting labels, capsules or wrappers, the Underwriters, if liable therefor under the terms of this Policy, shall not

be liable for more than an amount sufficient to pay at cost of new labels, capsules or wrappers, and the costs of reconditioning the goods[.]

\* \* \*

### Cargo Claims Handling Procedure

In the event of circumstances which may result in a claim the following procedures should be followed: Immediate advice must be given to Lonmar Global Risks Limited and if a Certificate of Insurance has been issued, to the local Lloyd's Agent or Survey Agent as detailed in the Certificate of Insurance.

. . . .

**The Following documentation should be provided as soon as possible in support of any claim**:
- Original or legible copy of the front and reverse sides of the ocean bill of landing / airwaybill / other contract of carriage
- Copy of commercial sales / purchase invoice
- Copy of packing list
- Copy of discharge tally or dock receipt
- Copy of delivery receipt(s) (If a containerized [sic] shipment the seal numbers should be recorded on the delivery receipt and the actual seals retained for further inspection.)
- Original insurance certificate (if issued)
- Copy of written claim submitted to the delivering carrier or other third parties and any replies received. (Please see an example of a complaint letter below)
- Copies of any photographs taken of the loss / damage
- Original survey report and fee invoice (if applicable)
- Copies of repair estimates / invoices (if applicable)
- Statement of claim

[D.E. 33-3 at 1–2, 8–10, 12, 17–18].

## B. *The Lawsuit*

After almost two years of back and forth regarding Crawford's claim investigation, the parties reached an impasse, prompting CENA to file a single count complaint for breach of contract against the Underwrites in Florida state court on August 2, 2019. The Underwriters removed the lawsuit to federal court on the basis

5

of diversity jurisdiction on January 31, 2020. Plaintiff alleges that Underwriters' refusal to extend payment for the disputed claims amounts to a breach of the policy. Crawford and the Underwriters, on the other hand, have consistently premised the denial of coverage on the fact that CENA has failed to provide supporting documentation that substantiates its claimed losses.

The parties appeared at a discovery hearing before the undersigned on September 3, 2020, wherein Underwriters complained about CENA's production deficiencies (*i.e.*, document dumping practices) and obtained an order compelling CENA to produce better responses to the Insurer's requests for evidence. *See* [D.E. 33-15]. At the hearing, Underwriters objected to a spreadsheet produced by CENA (the "Summary Spreadsheet"), which purports to evidence the extent of the Company's claims by summarizing in a list format the hundreds of items and expenses that make up the Company's Water Products and Extra Expenses alleged losses. Specifically, Underwriters took issue with the fact that CENA had not produced any of the underlying documents used to compile and calculate these entries and, as such, it was impossible to verify the accuracy of the quantities, values, and locations alleged therein. *Id.* at 17–23. Counsel for CENA stated at the hearing that the Plaintiff does not have those original documents. *Id.* Counsel was clearly on notice, however, of the evidentiary issues that may be presented by the absence of those documents and the need to obtain substitute alternative evidence to rely upon at summary judgment or at trial.

Based on these undisputed facts, on April 18, 2022, Underwriters filed this motion for summary judgment, arguing that judgment should be entered in its favor because: (i) under Florida law, CENA does not have an insurable interest in the Water Products Claim; (ii) CENA's evidentiary record on damages is insufficient to meets its burden of proof in opposing summary judgment; (iii) CENA failed to cooperate with the Insurer's investigation; (iv) the Water Products Claim should be valued on a cost valuation basis; and (v) the Extra Expenses Claim is not covered under the terms of the Policy.  [D.E. 34 at 1–2].

As explained further below, we review the record submitted on the motion and Plaintiff's response in the light most favorable to Plaintiff.  But even in that light, CENA has failed to make an adequate evidentiary showing in support of its alleged damages—an essential element of its breach of contract claim.

## II.  APPLICABLE PRINCIPLES AND LAW

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

7

motion. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986). In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. ANALYSIS

As noted earlier, Underwriters has accepted coverage and extended payment to Plaintiff for damages arising from Hurricane Maria to the tune of $1.5 million. Still in dispute, however, are CENA's additional claims for losses arising from the alleged destruction of Del Sol's bottled water related inventory, as well as extra storage and cargo demurrage fees incurred by CENA in the wake of the hurricane. Underwriters moves for summary judgment on CENA's breach of contract claim, arguing, among other things, that CENA has failed to provide admissible evidence of its damages sufficient to make its claimed losses reasonably certain and non-speculative.

Specifically, Defendant takes issue with CENA's evidentiary record of damages in this case, which, primarily consists of a large spreadsheet that purports to establish the overall value of the Company's losses. [D.E. 33-2 at 7–12]; [D.E. 45-1 at 10–13, 30–31]. Defendant alleges that the spreadsheet, which summarizes in list format the hundreds of items and expenses that make up the Company's alleged Water Products and Extra Expenses losses, is inadmissible pursuant to Federal Rule of Evidence 1006. Accordingly, Defendant submits that without this list of unverified amounts and items articulated in the spreadsheet, Plaintiff's evidentiary record is nothing more than an unhelpful collection of documents from which no jury could reasonably discern the existence of CENA's alleged losses—a position supported by Defendant's forensic accounting expert's opinion and which *CENA does not controvert*. [D.E. 34 at 7–12; D.E. 33-7].

Based on our independent review of the available record, we find that CENA has failed to meet its evidentiary burden with respect to the alleged damages because the unverified summary on which it primarily relies is inadmissible. The Company's vague, unspecific, and non-corroborative references to a massive and mostly unhelpful record do not give rise to a genuine, evidence-based dispute of material fact as to its claimed damages.

It is well established that to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position[.]" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Indeed, summary judgment is proper where "a party [ ] fails to make a showing sufficient to

9

establish the existence of an element essential to that party's case." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 816 (11th Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986)).  And, under Florida law, "evidence as to the amount of damages cannot be based on speculation or conjecture, but must be proven with certainty." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin.*, LLC, 904 F.3d 1197, 1222 (11th Cir. 2018) (quoting *Caulkins Indiantown Citrus Co. v. Nevins Fruit Co.*, 831 So.2d 727, 734 (Fla. 4th DCA 2002)).

As a threshold matter, we note that CENA's response in opposition to Defendant's motion for summary judgment is deficient in multiple respects.  First, CENA's brief did not respond at all to Underwriters' Fed. R. Evid. 1006 inadmissibility objections, despite the substantial merits that these arguments posed on their face.  [D.E. 42 at 7–10].  *See Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001) (arguments that are not briefed, are deemed abandoned).  Second, CENA's statement of material facts in opposition improperly cites to CENA's own pleadings and to a vague and scant affidavit in support of its factual averments, many of which actually fail to dispute Defendant's assertions.  [D.E. 43 ¶¶ 6, 12, 33, 41, 42 (citing generally to "Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment")].  And third, CENA's brief repeatedly directs the Court to a massive record of hundreds of pages without any particular citations and without specifying the documents therein that purportedly create genuine issues of fact.  [D.E. 42 at 7 (directing the Court to "See Production Documents attached hereto as composite Ex. 'D,'" which consists of 600 pages, without providing the pincite

references required by Local Rule 56.1(b)(1)(B))]. In other words, Plaintiff engaged in the same kind of document dumping that the undersigned had previously warned CENA about during the Parties' September 3, 2020, discovery hearing. [D.E. 33-15 at 27–29].

Turning to Defendant's admissibility objections to the Summary Spreadsheet, we find that CENA's spreadsheet is an inadmissible summary pursuant to Fed. R. Evid. 1006. In pertinent part, Rule 1006 provides that "the contents of voluminous writings, records, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation[.]" However, because a Rule 1006 exhibit constitutes substantive evidence, the underlying materials or documents on which the summary is based "must be made available for 'examination or copying ... by other parties at [a] reasonable time and place[.]" *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004) (quoting Fed. R. Evid. 1006); *see also* C.A. Wright & V.J. Gold, 31 *Fed. Prac. & Proc. Evid.* § 8043 (2d ed.) ("Rule 1006 evidence may also be excluded where the source materials are inadmissible hearsay or even where just some parts of those materials are inadmissible hearsay.").

Here, it is undisputed that the spreadsheet purports to establish the Company's alleged losses by summarizing in list format the hundreds of items and expenses that make up the disputed water products and extra expenses claims. It is also undisputed that the hundreds of entries listed in the spreadsheet were compiled by staff members in Puerto Rico, including but not limited to Aurelio Leyva (part

11

owner of Del Sol), Jonathan Leyva (CENA's CFO), and Edward Sacks (CENA's former president).  However, besides this general information, Plaintiff does not have much additional knowledge about what went into the actual creation of this summary or the soundness of its contents.  For instance, CENA does not know how the quantity and price figures displayed in the hundreds of entries were actually ascertained; CENA does not know who *exactly* participated in the compilation of this data, nor whether any original drafts of the spreadsheet exist; CENA does not know if the inventory counts that went into compiling the summary were carried out through physical inspections at the different warehouses, or by means an of inventory records tally; CENA does not know the original location of the inventory entries (*i.e.*, whether the items were stored at Coamo, Comerio, or Luquillo);  CENA does not know what type of inventory software was implemented by Del Sol; and more fundamentally, CENA is not sure what kind of supporting documentation could have been used to compile the water products entries, and it has no idea whether any of the underlying documents used to compute the extra expenses entries still exist. [D.E. 33-4, Deposition of CENA's 30(b)(6) Witness, at 15–18, 20–22, 24–25, 34–36].

In other words, although the spreadsheet purports to draw from data contained in underlying documents, including invoices, inventory lists, and proof of payments, none of these underlying documents have been produced to the Underwaters for inspection or copying as required by Rule 1006.  Indeed, by the Company's own admissions, CENA does not have and cannot recover these underlying documents,

[D.E. 26 at 19; D.E. 33-4 at 20–21, 34–36],[4] which in turn makes the contents of this spreadsheet fatally flawed from an admissibility perspective because it is impossible to verify the source, accuracy, and validity of the amounts of damages claimed in therein.  Accordingly, even when viewed in the light most favorable to Plaintiff, this Summary Spreadsheet constitutes inadmissible evidence that cannot be considered for substantive purposes in summary judgment.  *See Peat, Inc.*, 378 F.3d at 1161 (finding non-business record summary excludable under Rule 1006 because it was premised on inadmissible hearsay and contained conclusory allegations unsupported by independent evidence in the record); *United States v. Melgen*, 967 F.3d 1250, 1260 (11th Cir. 2020) (Under Rule 1006, "the essential requirement is not that the [summary] be free from reliance on any assumptions, but rather that these assumptions be supported by evidence in the record.") (quotation marks and citations omitted). *Cf. Affiliati Network, Inc. v. Wanamaker*, 2017 WL 8784853, at *3 (S.D. Fla. Aug. 23, 2017) (denying motion to exclude summary spreadsheet where proponent of exhibit *could* authenticate the underlying documents and move to *admit* these underlying documents into the record) (emphasis added).

Despite this gap in its evidentiary record, CENA submits that the Company has met its burden of proof under Rule 56 because "Plaintiff has made Defendant aware that many of the [underlying] documents were completely destroyed during

---

[4] The Company has stated that one of the reasons for its knowledge deficit with respect to underlying documents is the fact that Edward Sacks, the Company's former president and the person spearheading CENA's claim process, is no longer employed at CENA, and the Company is unable to recover Mr. Sack's company email records. *See* [D.E. 33-15 at 19–20].

Hurricane Maria," and "[t]he efforts to list the losses on the spreadsheet, coupled with the various financial documents provided by Plaintiff are sufficient for Defendants to determine adequate indemnification." [D.E. 42 at 7–8]. CENA's argument is unpersuasive for multiple reasons.

First, CENA's unspecific references to its 600-page record are unavailing. As noted earlier, the Company's vague and non-corroborative references to an unhelpful record do not give rise to any evidence-based disputes of material fact. *See Kent v. Walgreen Co.*, 2007 WL 486706, at *1 (S.D. Fla. Feb. 9, 2007) ("It is the obligation of the non-moving party, however, not the Court, to scour the record in search of the evidence that would defeat a motion for summary judgment"); *Harrison v. Forde*, 2023 WL 35754, at *4 (S.D. Ala. Jan. 4, 2023) ("A party may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting his position.") (citing *Hard Rock Cafe Int'l*, 703 F. App'x at 816).[5] CENA's brief does not rebut Underwriters' admissibility objections, and instead of properly responding to Underwriters' significant evidentiary challenges by pointing to the specific evidence in the record that substantiates the Company's alleged damages, CENA's brief relies on conclusory

---

[5] Nevertheless, we have carefully reviewed the submitted record in its entirety and have been unable to discern how these facially unhelpful financial spreadsheets and documents could lead a jury to reach a non-speculative damages determination in favor of CENA. For instance, it is unclear how one can extrapolate from inventory, income, financial, and cashflow statements ending on December 31, 2016, any evidence of the hundreds of losses that according to the summary spreadsheet were sustained on September 20, 2017. Indeed, Underwriters' accounting expert opines categorically that this cannot be done, and CENA does not offer a countervailing expert opinion supporting the clam that this maze of financial documents can intelligibly substantiate its alleged damages.

14

allegations that are insufficient to create a genuine issue of material fact. [D.E. 42 at 7–10]; *see also Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("concrete facts rather than conclusory allegations and assertions are required to defeat a summary judgment motion"); *Overs v. Gen. Dynamics Info. Tech.*, No. 6:11-CV-217-ORL-28, 2012 WL 1854236, at *1 (M.D. Fla. May 21, 2012) ("Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative."); *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1036 (8th Cir. 2005) ("Evidence, not contentions, avoids summary judgment.") (quotation marks and citation omitted).

Second, CENA's conclusory allegations that the record it vaguely references supports its damages claims are expressly contradicted by the expert opinion of Underwriter's forensics accountant. *See* [D.E. 33-7]. While CENA's brief parrots the allegation that the abstract chart accounts, general ledgers, and inventory reports that are part of the record provide sufficient historical data to support its damages claims, Mr. Shechter's uncontroverted opinion categorically denies these conclusory averments. In his opinion, which is based on his review of the financial documents to which CENA alludes, Mr. Shechter states in no uncertain terms that, "General Ledger Inventory Report provided is of little, if any, value" and that "[o]f the inventory documents that were produced, the inventory records do not substantiate the amounts the Assured put[s] forth," and concludes that "CENA has not provided sufficient evidential documentation to substantiate the Water Products Claim as set forth in its claim summary spreadsheet." *Id.* at 7. Although CENA suggests

15

otherwise, the Company has not pointed towards a single concrete piece of evidence in the available record substantiating the alleged outstanding damages, nor has it provided any expert opinions of its own in support of its damages calculation (namely, $1,092,686.52 in bottled water inventory and $191,351 in extra expenses). That is a fatal failure in this type of case. *See Zurich Am. Ins. Co. v. Hardin*, No. 1:16-CV-2312, 2018 WL 5270356, at *3 (N.D. Ga. Mar. 14, 2018) ("Most reasonable jurors will have little familiarity with these financial transactions, and experts should be permitted to help the jury parse through voluminous corporate records to better understand what occurred.") (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)).

Finally, CENA's desperate effort to salvage the admissibility of its unsubstantiated damages spreadsheet by relying on the affidavit of Aurelio Leyva (part owner of Del Sol) is likewise unavailing. *See PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 849 (11th Cir. 2014) ("We have consistently held that a party's conclusory allegations are insufficient to enable the non-movant to withstand summary judgment."). Mr. Leyva's vague and scant statements do little, if anything at all, to cure the evidentiary shortcomings of CENA's summary spreadsheet and claimed losses. Although it is undisputed that he played a role in the creation of the spreadsheet, the vagueness of his two-page statement calls into question whether he even meets the personal knowledge basis that is required from an affiant. For instance, Mr. Leyva alleges that, following the storm, he visited "the Property" in order to assess the damage and take inventory of what was damaged.

16

[D.E. 41 ¶ 8]. However, it is undisputed that the summary spreadsheet purports to reflect Del Sol's inventory losses in at least three different locations across the municipalities of Coamo, Comerio, and Luquillo. Therefore, Mr. Leyva's vague and unspecific reference to "the Property" shed very little light as to where and what exactly he canvased.

Indeed, the skeletal statements in Mr. Leyva's affidavit, which are completely devoid of any specific detail, only highlight the evidentiary deficiencies of the summary spreadsheet. For instance, Mr. Leyva states that he created the spreadsheets. Yet he completely fails to explain how, when, or where he did so: he fails to state how the quantity and price figures displayed in the hundreds of entries were calculated; he fails to explain how he carried out the inventory counts; he omits any discussion regarding the original locations of the alleged inventory losses; and, more importantly, he completely fails to address the existence or whereabouts of the underlying documentation used to compile the spreadsheets. *See id.* ¶¶ 8–15.

Similarly, Mr. Leyva's conclusory assertion that the spreadsheet "was prepared during the ordinary course of its business," is completely unavailing in light of the undisputed facts of this case. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("conclusory allegations [set forth in a supporting affidavit] without specific supporting facts have no probative value" for summary judgment purposes.) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985)); *Burger King Corp. v. E-Z Eating*, 572 F.3d 1306, 1315, 1316 n.12 (11th Cir. 2009) (upholding summary judgment because the defendants' "vague" affidavits provided

17

"scant evidence . . . too scant to create a genuine [dispute]," where affidavits failed to state in detail the when, where, who, and how of the circumstances surrounding the relevant meeting.).

Based on the this record, we have little choice but to find that the Summary Spreadsheet is inadmissible evidence. The spreadsheet's contents are fatally flawed because it is impossible to verify the source, accuracy, and validity of the amounts stated therein, and the absence of any underlying documents makes the summary exhibit inadmissible pursuant to Fed. R. Evid. 1006. Further, once the summary spreadsheet is removed from the equation, Plaintiff's evidentiary record is nothing more than an unhelpful collection of documents from which no jury could reasonably discern the existence of CENA's alleged losses, rendering CENA unable to meet its evidentiary burden at this stage of the proceedings. Again, where a nonmoving party fails to make a showing on an essential element of its claim, "the plain language of Rule 56(c) mandates the entry of summary judgment." *Celotex*, 477 U.S. at 322–23. *See also Hard Rock Cafe Int'l*, 703 F. App'x at 816 (summary judgment is proper where "a party [ ] fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

In sum, having found no genuine issues of material fact, we hold that Underwriters is entitled to judgment as a matter of law because, on the available record, CENA's claim devoid of the required evidentiary support that would allow a

18

jury to reasonably discern the existence of CENA's alleged losses. As such, we grant summary judgment in Underwriter's favor.[6]

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [D.E. 34] is **GRANTED**. Final Judgment on this Order in Defendant's favor will be separately entered as per Rule 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of March, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief Magistrate Judge

---

[6] Because CENA failed to sustain an essential element of its case in chief, which is dispositive of the case, we do not address any of the remaining arguments in Defendant's motion. Underwriters is entitled to judgment as a matter of law on the failure to satisfy the Plaintiff's burden of supporting its damages.